FILED 2009 MAY 20 PM 3:03
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY ___

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2008 Grand Jury

| UNITED STATES OF AMERICA, | ) CR No. 09 **CR 09 00490** |
|---|---|
| Plaintiff, | ) <u>I N D I C T M E N T</u> |
| v. | ) [18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 1341: Mail Fraud; 26 U.S.C. § 7201: Income Tax Evasion; 18 U.S.C. § 1001(a)(2): False Statement Within Jurisdiction of United States; 18 U.S.C. § 1519: Destruction, Alteration, or Falsification of Records in Federal Investigation; 18 U.S.C. § 2(b): Causing an Act To Be Done; 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), 21 U.S.C. § 853: Criminal Forfeiture] |
| ROBERT TRINGHAM, | |
| Defendant. | |

The Grand Jury charges:

COUNTS ONE THROUGH FOUR

[18 U.S.C. §§ 1343, 2(b)]

A. <u>INTRODUCTION</u>

1. At all times relevant to this Indictment:

   a. Defendant ROBERT TRINGHAM ("TRINGHAM") was a resident of Diamond Bar, California, within the Central District of California.

SYM:sym

      b.   First National Bancorp ("FNB") was a corporation organized under the laws of the State of California, which purported to operate out of Rancho Cucamonga, California. Defendant TRINGHAM was the chief executive officer, secretary, chief operating officer, and director of FNB.

      c.   The National Association of Securities Dealers, Inc. ("NASD"), currently known as Financial Industry Regulatory Authority ("FINRA"), was an industry organization representing persons and companies involved in the securities industry in the United States. The NASD regulated trading in equities, corporate bonds, securities futures, and options. It licensed individuals and provided education and qualification examinations to industry professionals.

      d.   Companies such as Standard & Poor's and Moody's evaluate and rate bonds traded on the New York Stock Exchange. A "Grade AAA" bond is the most secure bond with the lowest rate of return. The ratings continue through "Grade AA," "Grade A," "Grade BBB," "Grade BB," etc. With each step in grade, the risk increases, as does the rate of return.

      e.   As used in this Indictment, "leverage" is a technique that allows an investor to make an investment with "borrowed" funds. The amount of money an investor can borrow relates directly to the amount of money or collateral that an investor has.

B.   <u>THE SCHEME TO DEFRAUD</u>

   2.   Beginning on a date unknown but no later than in or about October 2005, and continuing through in or about March

2008, in Los Angeles County, within the Central District of California, and elsewhere, defendant TRINGHAM, together with others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud investors as to material matters, and to obtain money and property from investors by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

  3. The scheme to defraud was carried out, in substance, in the following manner:

    a. Defendant TRINGHAM solicited individuals to invest with him and/or FNB for the stated purpose of providing defendant TRINGHAM with money to use as leverage to trade in bonds.

    b. Defendant TRINGHAM spoke and caused others to speak with prospective investors in an effort to convince them to invest with him and/or FNB. Through those discussions, defendant TRINGHAM made and caused others to make the following materially false and misleading representations and promises, among others, to prospective investors:

      (i) Each investor's investment would be pooled with the investments of others to provide defendant TRINGHAM and/or FNB with the required leverage to trade in Grade A Bonds;

      (ii) Defendant TRINGHAM would purchase bonds at a discount rate by pooling the investments as collateral;

(iii) Each investor's investment would be deposited in a secure, separate account in the investor's name at Max International Broker Dealer Corp. ("Max International");

(iv) The investment would then be placed in a JP Morgan Money Market account by Max International to earn money market rates in addition to any returns on defendant TRINGHAM's bond trading;

(v) Investors would be provided with website access to their accounts;

(vi) Defendant TRINGHAM would have an exit buyer in place before purchasing any bonds. For purposes of this indictment, an exit buyer is an individual who agrees to purchase a particular bond at a certain price;

(vii) Defendant TRINGHAM would place two to three trades per week at a profit of 4% per trade; and

(viii) Defendant TRINGHAM's fee for his bond trading services would be 50% of the profits made on the bond trades.

c. Investors who decided to invest money with defendant TRINGHAM entered into an Investment Agreement with FNB. In the Investment Agreement, defendant TRINGHAM made and caused to be made the following materially false and misleading representations and promises, among others:

(i) Defendant TRINGHAM "anticipated that future margins of 4% or better may be achieved on each settled trade;"

(ii) "Approximately 7 or 8 settled trades are expected to be achieved each calendar month;" and

4

    (iii) Defendant TRINGHAM's fee for his bond trading services was 50% of profits on the trades.

  d. Defendant TRINGHAM set up an account at Max International in the name of FNB to receive the investors' monies (the "FNB Max International account"). Because Max International and applicable banking regulations required defendant TRINGHAM to maintain separate accounts for each investor who invested money with FNB, defendant TRINGHAM made, gave, and caused to be made and given to Max International false statements and documents designed to make it appear that the monies deposited into the FNB account were legitimate monies earned by FNB, rather than investors' monies intended to be used for investment in FNB.

  e. Defendant TRINGHAM concealed the following material facts from the investors, which he then well knew:

    (i) Each investor did not maintain a separate account at Max International;

    (ii) Defendant TRINGHAM pooled all of the investors' money in one account at Max International in the name of FNB;

    (iii) Defendant TRINGHAM did not complete the bond trades as promised during the time period of October 2005 through February 2006;

    (iv) Defendant TRINGHAM transferred millions of dollars of the investors' monies to himself for his own personal use, such as the purchase of a home and a luxury automobile; and

1    (v) Defendant TRINGHAM had previously been convicted of deception, forgery and theft in the United Kingdom.

    f.   Defendant TRINGHAM provided and caused to be provided to investors overstated account values, including fraudulent account statements that falsely represented FNB as "A licensed Securities Dealer."

    g.   Defendant TRINGHAM attempted to prevent investors from complaining to federal or state authorities or bringing a lawsuit against FNB by the following actions:

        (i) Defendant TRINGHAM requested and caused others to request that investors send termination agreements in exchange for an FNB immediately cashable bond valued at 135% of the investor's original investment;

        (ii) Defendant TRINGHAM sent interest payments to investors; and

        (iii) Defendant TRINGHAM and others told investors that if they spoke to the authorities, they would not get all of their money back.

    h.   As a result of the above-described fraudulent scheme, defendant TRINGHAM fraudulently obtained more than $7,000,000 from investors.

C.   USE OF THE WIRES

    4.   On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendant TRINGHAM, for the purpose of executing and attempting to execute the above-described scheme to defraud,

transmitted and willfully caused the transmission of the following items by means of wire and radio communication in interstate and foreign commerce:

| COUNT | DATE | WIRE |
|---|---|---|
| ONE | 10-26-05 | Wire transfer of $850,000 from Max International in New York to FNB account at Wilshire State Bank in California |
| TWO | 10-27-05 | Wire transfer of $650,000 from Max International in New York to FNB account at Wilshire State Bank in California |
| THREE | 11-2-05 | Wire transfer of $500,000 from Max International in New York to FNB account at Wilshire State Bank in California |
| FOUR | 11-14-05 | Wire transfer of $200,000 from Max International in New York to FNB account at Wilshire State Bank in California |

COUNTS FIVE THROUGH SEVEN

[18 U.S.C. §§ 1341, 2]

5.   The Grand Jury hereby repeats and realleges paragraphs 1 through 3 of this Indictment as if fully set forth herein.

D.   USE OF MAILS

6.   On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendant TRINGHAM, for the purpose of executing the above-described scheme to defraud, willfully caused the following items to be placed in an authorized depository for mail matter to be sent and delivered by private or commercial interstate carrier, according to the directions thereon:

| COUNT | DATE | ITEM MAILED |
|---|---|---|
| FIVE | 10-11-05 | First National Bancorp's Articles of Incorporation and Internal Revenue Service Tax Identification Number |
| SIX | 10-22-05 | Investor E.A. Investment Agreement to First National Bancorp |
| SEVEN | 12-18-06 | Interest check to investor G.K. |

COUNT EIGHT

[26 U.S.C. § 7201]

7.  During the calendar year 2005, in Los Angeles County, within the Central District of California, and elsewhere, defendant ROBERT TRINGHAM ("TRINGHAM") had and received a taxable income of approximately $1,431,836 and upon that taxable income owed to the United States of America an income tax of approximately $479,863; defendant TRINGHAM was required by law on or before April 15, 2006, to prepare and file an income tax return with the Internal Revenue Service and to pay such income tax.

8.  Knowing these facts, defendant TRINGHAM, within the Central District of California, did willfully and knowingly attempt to evade and defeat the above-stated income tax due and owing by him to the United States of America for the calendar year 2005 by:

    a.  concealing and attempting to conceal from all proper officers of the United States his true and correct taxable income by:

        (i) attempting to conceal the sources of his income by causing funds to be deposited into bank accounts in the name of First National Bancorp ("FNB") and controlled by defendant TRINGHAM;

        (ii) conducting personal financial transactions with funds in a bank account in the name of FNB through the use of cashier's checks and wire transfers; and

1            (iii) failing to report his income to his tax
2 return preparer; and
3            b.    failing to file an income tax return reporting
4 any income.
5 The likely effect of the above acts would be to mislead or to
6 conceal his income, in violation of Title 26, United States
7 Code, Section 7201.

## COUNT NINE

[18 U.S.C. §§ 1519, 2(b)]

9. The Grand Jury hereby repeats and realleges paragraphs 1 through 3 of this Indictment as if fully set forth herein.

10. On or about February 9, 2006, in Los Angeles County, within the Central District of California, and elsewhere, defendant ROBERT TRINGHAM ("defendant TRINGHAM") knowingly made, and caused others to make, a false document, namely an account statement from First National Bancorp ("FNB") for R.W., dated October 17, 2005, which listed G.L. as a "licensed Securities Dealer" in the letterhead. In truth and in fact, as defendant TRINGHAM then well knew, the original account statement from FNB to R.W. dated October 17, 2005, listed FNB as a "licensed Securities Dealer" in the letterhead with no reference to G.L. Defendant TRINGHAM provided the false account statement to the Internal Revenue Service ("IRS") with the intent to impede, obstruct, and influence an investigation of a matter within the jurisdiction of the IRS.

## COUNT TEN

[18 U.S.C. § 1001(a)(2)]

11. On or about February 9, 2006, in Los Angeles County, within the Central District of California, and elsewhere, in a matter within the jurisdiction of the executive branch of the government of the United States, specifically the Internal Revenue Service ("IRS") and the United States Postal Inspection Service ("USPIS"), defendant ROBERT TRINGHAM ("TRINGHAM") knowingly and willfully made a materially false, fictitious, and fraudulent statement and representation, in that defendant TRINGHAM told an IRS Special Agent and a USPIS Postal Inspector that he had no criminal history either in the United States or the United Kingdom. In truth and in fact, as defendant TRINGHAM then well knew, he had been convicted of thirteen various offenses of deception, forgery, and theft on May 10, 1989, in the United Kingdom.

COUNT ELEVEN

[18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), 21 U.S.C. § 853]

12. The Grand Jury hereby repeats and realleges paragraphs 1 through 3 of this Indictment as if fully set forth herein.

13. Upon conviction of any of the offenses in violation of Title 18, United States Code, Sections 1343 and 1341 set forth in Counts One to Seven of this Indictment, defendant TRINGHAM shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Title 21, United States Code, Section 853, the following:

    a. All right, title, and interest in any and all property, real or personal, which constitutes or is derived from proceeds traceable to such offenses;

    b. A sum of money equal to the total amount of proceeds derived from each such offense for which defendant is convicted.

14. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), defendant TRINGHAM, if so convicted, shall forfeit substitute property, up to the total value of the property described in paragraph 13(a) if, by any act or omission of the defendant, the property described in paragraph 13(a), or any portion thereof, (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond

1 | the jurisdiction of the court; (d) has been substantially
2 | diminished in value; or (e) has been commingled with other
3 | property that cannot be divided without difficulty.
4 |
5 |                                           A TRUE BILL
6 |
7 |                                             /S/
8 |                                         Foreperson
9 | THOMAS P. O'BRIEN
   United States Attorney
10 |
11 | *(signed) Christine C. Ewell*
   CHRISTINE C. EWELL
12 | Assistant United States Attorney
   Chief, Criminal Division
13 |
14 | STEPHANIE YONEKURA McCAFFREY
   Executive Assistant United States Attorney
15 |
16 | DOUGLAS A. AXEL
   Assistant United States Attorney
17 | Chief, Major Frauds Section
18 |
   JOSEPH AKROTIRIANAKIS
19 | Assistant United States Attorney
   Major Frauds Section
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |